**SO ORDERED,**



**Judge Selene D. Maddox**

**United States Bankruptcy Judge**

**The Order of the Court is set forth below. The case docket reflects the date entered.**

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF MISSISSIPPI

**IN RE: CEDRIC WOOTEN**                                **CASE NO.:  21-11375-SDM**

**DEBTOR(S).**                                          **CHAPTER 13**

## MEMORANDUM OPINION AND ORDER DENYING MOTION TO EXTEND AUTOMATIC STAY

THIS CAUSE came before the Court for hearing on the Debtor's *Motion to Extend Automatic Stay* (the "Motion to Extend")(Dkt. #18) and a *Response* (Dkt. #29) filed by the United States Trustee (the "UST"). On August 10, 2021, the Court held a telephonic hearing, at which the Debtor's attorney and the UST presented arguments to the Court. The Court also heard testimony from the Debtor, Cedric Wooten ("Wooten"). At the conclusion of the hearing, the Court entered a bench ruling denying Wooten's Motion to Extend because he failed to meet certain requirements under 11 U.S.C. § 362(c)(3)[1]. This Memorandum Opinion and Order incorporates that ruling by reference, including any findings of fact and conclusions of law.

---

[1] Except where stated otherwise, all subsequent statutory references are to Title 11 of the U.S. Code.

## I. JURISDICTION

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a) and the Standing Order of Reference signed by Chief District Judge L.T. Senter and dated August 6, 1984. This is a "core proceeding" under 28 U.S.C. § 157(b)(2)(A)(matters concerning the administration of the estate) and (G)(motions to terminate, annul, or modify the automatic stay).

## II. FACTS AND PROCEDURAL HISTORY

Wooten is no stranger to the bankruptcy court. Wooten's current bankruptcy case, Case No. 21-11375, is his sixth bankruptcy filing since October of 2018. Previously, Wooten filed a chapter 13 case, Case No. 18-14139, which was dismissed on November 20, 2018 for the failure to timely file schedules, statements, and other documents. On December 7, 2018, Wooten filed another chapter 13 case, Case No. 18-14816, which was dismissed on February 7, 2019 for failure to make plan payments and amend the chapter 13 plan. On February 13, 2019, Wooten, yet again, filed a chapter 13 case, Case No. 19-10628, which was dismissed on November 14, 2019 for failure to make plan payments. On November 26, 2019, Wooten filed a chapter 13 case, Case No. 19-14820, which was dismissed on December 26, 2019 for failure to timely file schedules, statements, and other documents. Finally, Wooten's most previous chapter 13 case, i.e., the case immediately preceding the current bankruptcy case, was filed on January 16, 2020, Case No. 20-10203, and was dismissed on May 25, 2021 for failure to make plan payments.[2]

---

[2] The Court notes that it dismissed three of Wooten's five previous bankruptcy cases, at least in part, for failing to make the required chapter 13 plan payments. Two of Wooten's previous cases, Case No. 19-10628 and Case No. 20-10203, were dismissed for failure to make chapter 13 plan payments *postconfirmation*. The Court also points out that Wooten has only been without bankruptcy protection *108 days* out of the last *1,040 days*, from the period beginning October 20, 2018 through August 25, 2021, including today (in so far as the automatic stay is still in effect as to property of the bankruptcy estate).

In Wooten's most previous bankruptcy case, Case No. 20-10203, Wooten entered into an agreed order, which resolved the Chapter 13 Trustee's objection to confirmation (Case No. 20-10203, *Agreed Order*, Dkt. #60). Notably, the agreed order provided that:

> [S]hould the Debtor fail to remit the entire plan payment due for any consecutive two-month period, and/or should the Debtor become more than 60 days delinquent in plan payments to the Trustee, this case shall be dismissed without further notice or hearing. . . .
>
> [F]urther, should this case be dismissed, the Debtor shall be barred from refiling a bankruptcy petition in this or any other Bankruptcy Court for a period of 180 days from the date of the entry of the Final Order of Dismissal.

*Id.* At some point later, Wooten became 60 days or more delinquent in his plan payments, and the Court entered a final order dismissing the bankruptcy case (Case No. 20-10203, *Final Order of Dismissal*, Dkt. #87). The final dismissal order contained the "180-day bar" language.

Despite the Court's order prohibiting another bankruptcy filing for at least 180 days, Wooten filed his voluntary petition in this current bankruptcy case on July 16, 2021—only 52 days after the dismissal of his most previous case (Dkt. #1). A mere three days later, the UST filed a *Motion to Dismiss with Prejudice* (the "Motion to Dismiss")(Dkt. #7), arguing the current bankruptcy case should be dismissed for bad faith due to Wooten's previous bankruptcy filings. The Chapter 13 Trustee filed a *Joinder* to the UST's Motion to Dismiss (Dkt. #9). Around the same time, Wooten filed a *Motion to Modify an Agreed Order* (the "Motion to Modify")(Dkt. #11), which apparently seeks to modify one or more of the Court's orders in his most previous bankruptcy case to remove the 180-day bar.[3]

As to the matter currently before the Court, on July 22, 2021, Wooten filed his Motion to Extend claiming that his current bankruptcy case (voluntary petition) and plan were filed in good

---

[3]The UST's Motion to Dismiss and Wooten's Motion to Modify are currently set for hearing on September 8, 2021.

faith. Further, the Motion to Extend states that Wooten "believes the Chapter 13 Case and Plan will be confirmed and that he will be able to fully perform under the terms of the Plan." (Dkt. #18). In response, the UST asserts that Wooten filed his current bankruptcy case in bad faith. At the hearing on August 10, 2021, Wooten's attorney[4] argued that most of the previous case dismissals were not the fault of his client—at least in the circumstances where the cases were dismissed for failure to file certain documents, file an amended chapter 13 plan, or pay the filing fee. Further, Wooten's attorney stated that based on the plan payment in the proposed chapter 13 plan (Dkt. #25) in the current bankruptcy case (approximately $1,172.00), Wooten would be able to make the chapter 13 plan payments and successfully complete his plan. Wooten's attorney suggested that the most previous case was dismissed due to a larger plan payment of almost $5,000.00—a chapter 13 plan payment Wooten could not afford.

The Court also heard some testimony from Wooten, who testified that because his work is steadier now, he would be able to make his plan payments. According to Wooten, he previously worked for himself, and now that he is employed by a company, Process Services Group, he can afford to make his chapter 13 plan payments at the $1,172.00 amount. Wooten testified that he now earns between $6,000.00-$7,000.00 of gross monthly income, as opposed to $4,000.00 of gross monthly income in his most previous case.[5] But he later contradicted his initial testimony in

---

[4]The Court is certainly aware that Wooten's attorney of record in the current bankruptcy case, Case No. 21-11375, is not the attorney who represented Wooten in his five previous cases.

[5]Wooten's Schedules I and J in the current bankruptcy case show that his gross income is currently $4,478.50. While the Court may take judicial notice of the fact that Wooten filed his schedules with the Court, and that those schedules contain certain information, the Court cannot take judicial notice that the information contained in the schedules is true for the purposes of a finding of fact. Wooten did not offer these schedules as evidence of his income nor did Wooten testify as to the information listed in his schedules. As such, the Court did not make any admissibility determination as to the information contained in those schedules or consider them for any evidentiary purposes in its ruling. The Court did, however, consider Wooten's testimony at the hearing on August 10, 2021. See *In re Abbatiello*, 484 B.R. 655, 658–59 (Bankr. M.D. Pa.

response to the Court's questions concerning his previous employment and income. Specifically, Wooten gave the following answers to the Court:

(1) Wooten's current employer is Process Services Group.

(2) Wooten began working with Process Services Group around the time of the dismissal of his most previous case, Case No. 20-10203, in May of 2021.

(3) Prior to working at Process Services Group, Wooten worked for RCI Construction earning between $6,000.00-$7,000.00 gross monthly income. Wooten began work for RCI Construction in March of 2021 but was laid off after a short period of time.

(4) Before employment with RCI Construction, Wooten worked for TIC for several months.

Both Wooten's attorney and the UST questioned Wooten about his knowledge of the 180-day bar, and Wooten conceded that he was aware of, and understood, the 180-day bar at the time of his § 341 meeting of creditors in the most previous bankruptcy case where his attorney was present.

### III. DISCUSSION

In general, § 362 provides for a stay that automatically takes effect upon the filing of a bankruptcy proceeding. 3 COLLIER ON BANKRUPTCY ¶ 362.01 (16th ed. 2019). Where a debtor had a previous bankruptcy case pending within the last year that was dismissed prior to the filing of a second bankruptcy case, the automatic stay will be limited to thirty days after the petition date in the second case. *In re Crilly*, 2020 WL 3549848 at *5 (Bankr. W.D. Okla. June 30, 2020). This thirty-day limitation may be extended on a motion of a party in interest and upon notice and

---

2013)(finding that a bankruptcy judge may take judicial notice of her own docket, including court records under Federal Rule of Evidence 201, but the truth of the content of the records is not inferred by taking judicial notice of the record itself; the determination of "adjudicative fact" should be accomplished by considering admissible evidence)(internal citations omitted)).

a hearing only if the party in interest demonstrates that the filing of the later case is in good faith. 11 U.S.C. § 362(c)(3)(B); *In re Stewart*, 606 B.R. 706, 711 (Bankr. S.D. Miss. 2019).

**A. Presumption of Bad Faith in Wooten's Current Bankruptcy Case**

To determine if a later case is filed in good faith, a court must first determine whether a presumption of bad faith arises in the filing of the later case. If this bad faith presumption does arise, it may be rebutted, but only by clear and convincing evidence to the contrary. 11 U.S.C. § 362(c)(3)(C). If the bad faith presumption does not arise, a debtor must show that the current case was filed in good faith under the less demanding preponderance of the evidence standard. 3 COLLIER ON BANKRUPTCY, ¶ 362.06(3)(b) (16th ed. 2019); *In re Thomas*, 352 B.R. 751, 754 (Bankr. D. S.C. 2006).

A case is presumptively filed not in good faith as to all creditors if one of three circumstances are present: (1) the debtor had more than one previous case pending during the previous year; (2) a case pending within the previous year was dismissed for failure to file certain required documents, provide adequate protection, or perform under a confirmed plan; or (3) there has not been a substantial change in the financial or personal affairs of the debtor since the most recent case was dismissed or there is no other reason to determine that the new case will result in a discharge. *In re Charles*, 334 B.R. 207, 215 (Bankr. N.D. Tex. 2005); 11 U.S.C. § 362(c)(3)(C)(i)(II)(aa)-(cc). As to whether the bad faith presumption arises, a debtor bears the burden of proof by a preponderance of evidence. *In re Furlong*, 426 B.R. 303, 309 (Bankr. C.D. Ill. 2010).

Because Wooten had only one previous case pending during the year prior to filing the current bankruptcy case, the Court's analysis will focus on the circumstances described in § 362(c)(3)(C)(i)(II)(cc)—whether Wooten failed to perform under the confirmed plan in his most

previous case. Courts have held that a debtor's failure to make plan payments under a confirmed plan gives rise to a presumption of bad faith in the later case. *See In re Casteneda*, 342 B.R. 92, 95 (Bankr. S.D. Ca. 2006) (finding that the debtor, who defaulted on her chapter 13 plan payments resulting in the dismissal of the case, constitutes a failure to perform under the terms of a confirmed plan); *see also In re Muhammad*, 536 B.R. 469, 474 (Bankr. M.D. Ala. 2015) (finding that a debtor's prior case, which was dismissed for the failure to perform under the plan, resulted in a presumption that the new case was not filed in good faith).

Here, the facts are undisputed that Wooten failed to perform under the confirmed plan in his most previous bankruptcy case, Case No. 20-10203. Wooten admitted as much in his testimony. Specifically, Wooten testified that he became delinquent in his chapter 13 plan payments because of a lack of steady work and several changes in employment. Further, Wooten testified that he attempted to make several payments to the Chapter 13 Trustee to get "caught up," but those payments were returned because his case had already been dismissed. Based on the evidence presented to the Court, the Court finds that Wooten failed to make his required chapter 13 plan payments[6], and as such, failed to perform under the terms of his confirmed plan in his most recent bankruptcy case. Therefore, the presumption arose that Wooten's current bankruptcy case was not filed in good faith.[7]

---

[6]The final dismissal order in Wooten's most previous bankruptcy case, Case No. 20-10203, acknowledged that Wooten was $15,370.00 in arrears as of May of 2021. Case No. 20-10203, *Final Order of Dismissal*, Dkt. #87.

[7]Because the presumption that Wooten's current bankruptcy case was not filed in good faith has already been established, the Court finds that an analysis of whether Wooten experienced a change in financial or personal affairs since the dismissal of the most previous bankruptcy case is not necessary under § 362(c)(3)(C)(i)(III). Further, the Court will not opine as to whether there is any other reason to conclude that his current bankruptcy case will result in a confirmed plan that will be fully performed under § 362(c)(3)(C)(i)(III)(bb).

**B. Wooten's Failure to Rebut the Bad Faith Presumption**

Once the presumption of bad faith arises with respect to the current bankruptcy case, the automatic stay may only be extended under § 362(c)(3)(C) if a debtor presents clear and convincing evidence to the contrary. In other words, a debtor must demonstrate clear and convincing evidence that the current bankruptcy case was filed in good faith. Evidence is clear and convincing if it "produces in the mind of the trier of fact an abiding conviction that the truth of the factual contentions is highly probable." *In re Muhammad*, 536 B.R. at 475 (citing *In re Ferguson*, 376 B.R. 109, 118 (Bankr. E.D. Pa. 2007)).

The established burden of clear and convincing evidence requires the debtor to *produce evidence* demonstrating a good faith filing of the current case. The existence of this presumption means that "if the movant comes forward with no evidence, the motion to extend must be denied." *In re Thomas*, 352 B.R. at 754. In fact, when the bad faith presumption applies, "it is as though evidence has already been provided, establishing that the case was not filed in good faith . . . if no further evidence is presented by the [d]ebtor, the only evidence the Court has is the presumption." *In re Montoya*, 333 B.R. 449, 457 (Bankr. D. Utah 2005).

The term "good faith" is not defined in the Bankruptcy Code as a whole, nor does the Bankruptcy Code define good faith in the context of extending the automatic stay. Although the Fifth Circuit has not defined good faith in the context of § 362(c)(3)(C), it has explored the meaning of good faith in the context of granting relief from the automatic stay under § 362(d) and plan confirmation under § 1325(a)(3). In both contexts, the Fifth Circuit has referred to and employed a totality of the circumstances approach in determining good faith on the part of a debtor. *In re Little Creek Development Co.*, 779 F.2d 1068, 1072 (5th Cir. 1986) ("Findings of lack of good faith in proceedings based on § 362(d) . . . have been predicated on certain recurring but non-

exclusive patterns, and they are based on a conglomerate of factors rather than on any single datum"); *In re Chaffin*, 816 F.2d 1070, 1074 (5th Cir. 1987) ("The totality of the circumstances test means what it says: It exacts an examination of all of the facts in order to determine the bona fides of the debtor.").

Bankruptcy courts in other jurisdictions have also employed the totality of the circumstances approach in determining good faith, considering factors such as: the debtor's history of bankruptcy filings; why the debtor's prior case was dismissed; whether the debtor intended to complete a chapter 13 plan or obtain a discharge; and the debtor's employment history and prospects. *In re Muhammad*, 536 B.R. at 475-77; *In re Thomas*, 352 B.R. 755-57 (enumerating other factors weighed by courts in determining good faith).[8]

Even though there is no formula for making a totality of the circumstances determination, and thus no particular factor that is outcome determinative, other courts place a strong emphasis on a debtor's conduct in prior cases and, consequently, whether the debtor is a serial filer. *See In re Gibas*, 543 B.R. 570, 597 (Bankr. E. D. Wis. 2016); *see also In re Muhammad*, 536 B.R. at 475 ("What a debtor has done in the past is usually a good indicator of what she will do in the future . . . when looking backward, one has hard data–not just wishes and hopes. Perhaps the single most important factor in making the determination of whether a bankruptcy filing is in good faith is a prediction as to what will happen in the future.").

In *Gibas*, the debtors filed a chapter 11 case in the Eastern District of Wisconsin on October 2, 2015. 543 B.R. at 575. Because the debtors had filed a chapter 13 case in the same district within

---

[8]The Court acknowledges that other bankruptcy courts in the Northern and Southern Districts of Mississippi have also determined whether cases have been filed in good faith using the totality of the circumstances approach: *In re Coley,* Case No. 15-01684-NPO, slip op. (Bankr. S.D. Miss. Aug. 3, 2015) and *In re Bew*, Case No. 16-13325-NPO, slip op. (Bankr. N.D. Miss. Oct. 24, 2016).

the prior year, the debtors' attorney moved to continue the automatic stay under § 362(c)(3)(C). *Id*. Soon after, the creditor filed an objection to the motion to continue the stay. *Id*. A hearing on the motion and objection was set to be held on October 29, 2015; however, hours before the hearing, the creditor filed a supplemental objection that made the court aware of the debtors' "extensive bankruptcy history." *Id*. Specifically, the debtors filed six bankruptcies in Illinois since 2011, none of which were disclosed in their current petition. *Id*. The six prior cases had been filed successively: the first one was filed in 2011; the second was filed in 2012; the third and fourth were filed in 2013; and the fifth and sixth were filed in 2014. *Id*. at 578-581. All six cases were dismissed for issues relating to inconsistent information contained in their schedules and, most glaringly, the failure of both debtors to make their chapter 13 plan payments. *Id*.

Although the court ultimately determined that the debtors were ineligible for bankruptcy relief under § 109(g)(2)[9], the court nevertheless found that, even if the debtors had been eligible for chapter 11 relief, the debtors failed to demonstrate that they filed their current case in good faith after a totality of the circumstances review. *Id*. at 595. The court maintained that, while some courts may consider factors that another may not, the "essential inquiry" in making such a determination is the same: whether the debtor demonstrated both subjective and objective good faith. *Id*. at 597. The court noted that, when the debtor is a serial filer, the subjective component takes on a more important role in the inquiry: "no matter how feasible a plan appears on paper, it cannot succeed if the debtor has neither the intent nor the willingness to complete it . . . a debtor's conduct in prior cases is a valid consideration in determining whether the present action is a

---

[9]Based on the procedural posture of the Motion to Extend presently before the Court, the Court did not find it relevant at this juncture to analyze the applicability of § 109(g). Further, no parties addressed the applicability of § 109(g) in their pleadings or during the hearing on August 10, 2021. This, however, does not preclude the Court from future consideration of any Bankruptcy Code section regarding Wooten's eligibility as a "Debtor" in his current bankruptcy case.

legitimate effort to repay creditors or an abuse of the bankruptcy process. The past may very well be prologue in this respect." *Id*. Thus, when considering the debtors' bankruptcy filing history, failure to file required documents, failure to disclose required information, and failure to make plan payments, the court found that their most current filing was filed in bad faith. *Id*. at 599.

Further, a totality of the circumstances determination of whether a debtor has rebutted the bad faith presumption by clear and convincing evidence requires an examination of those facts that are most relevant and probative to the case at issue rather than relying upon an enunciated list of factors from any one jurisdiction. *In re Goodrich*, 591 B.R. 538 (Bankr. D. Vt. 2018).

In *Goodrich*, the court determined that a presumption of bad faith arose under § 362(c)(3)(C)(i)(II)(cc) and applied a totality of the circumstances analysis to determine whether the debtor rebutted such a presumption by clear and convincing evidence. *Id*. at 547-50. The court acknowledged that courts in other jurisdictions consider several factors when employing this test, but the *Goodrich* court did "not consider it necessary to evaluate each and every factor that has been considered by a court in a reported decision." *Id*. at 549 (citing *In re Ferguson*, 376 B.R. 109 (Bankr. E.D. Pa. 2007)). Instead, the court conducted an overall totality of the circumstances analysis, identifying certain factors most relevant to the case at hand to assist in such an analysis. *Id*. After analyzing the totality of the circumstances, the court noted that three factors were the "most decisive factors" in this particular debtor's case: the probability of the debtor's success in his current bankruptcy case; the reason for his prior dismissal; and prejudice to the creditor in the filing of his current case. *Id*. at 551-56. These three factors pushed the debtor over the line of bad faith and the court, by considering the totality of the circumstances through the lens of these factors, held that the debtor met the burden of clear and convincing evidence and was entitled to an extension of the automatic stay. *Id*. at 556-57.

This Court finds the totality of the circumstances analyses in *Gibas* and *Goodrich* particularly instructive in this case for several reasons. First, like the debtors in *Gibas,* Wooten's current bankruptcy case is his sixth bankruptcy case, all of which were filed within a three-year window. The Court cannot draw any other conclusion other than that Wooten is a serial filer. Second, as the court in *Gibas* considered the debtors previous conduct important in its analysis, Wooten's previous conduct in his cases becomes paramount to this Court's determination of whether Wooten can overcome the presumption that his current bankruptcy case was not filed in good faith. While Wooten's attorney attempted to shield Wooten from blame for the five previous case dismissals, as the Court has noted, at least three of those cases were dismissed due to the failure to make chapter 13 plan payments—one of the most important responsibilities of a chapter 13 debtor. Based on Wooten's testimony, it is clear to the Court that Wooten has failed to consistently maintain chapter 13 plan payments in many of his previous cases.

Further, the Court sees striking similarities between the debtors in *Gibas* and Wooten because many of Wooten's five previous bankruptcy cases were dismissed for similar reasons (failure to file documents, failure to make required chapter 13 plan payments, etc.). Finally, Wooten's lack of steady employment and income, and his inconsistent testimony regarding both, gives the Court pause as to whether Wooten would, once again, fail to make required plan payments under his proposed chapter 13 plan.

Like the court in *Goodrich*, this Court finds it necessary to review the totality of the present circumstances through the consideration of these facts; however, unlike the court in *Goodrich*, this Court cannot, with the facts presented before it, conclude that Wooten has met the high burden of clear and convincing evidence of good faith. *Cf. In re Collins*, 335 B.R. 646, 652-54 (Bankr. S.D. Tex. 2005) (finding that the debtor failed to meet the burden of clear and convincing evidence

where the court utilized a totality of the circumstances determination in conjunction with certain enumerated factors).

Perhaps the most crucial fact to the Court is Wooten's conduct in his most previous bankruptcy case: an agreement with the Chapter 13 Trustee not to file another bankruptcy case for at least 180 days should the case be dismissed. As Wooten testified at the hearing, he understood that a dismissal would bar him from filing another case, and despite that awareness and understanding, sought another attorney and filed his current bankruptcy case. This intentional conduct, coupled with Wooten's serial filing tendencies, consistent failure to make chapter 13 plan payments, inconsistent employment and income, and the already onerous presumption of bad faith, places extreme weight upon his shoulders. The Court simply cannot ignore this in any bad faith analysis and, by considering the totality of the circumstances through the lens of these facts, this Court finds Wooten has failed to rebut the presumption of bad faith by clear and convincing evidence.

Based on the above, it is hereby **ORDERED** that the *Motion to Extend Automatic Stay* (Dkt. #18) is **DENIED**. It is further **ORDERED** that the automatic stay shall not be extended as to any and all Creditors under 11 U.S.C. § 362(c)(3).

##END OF ORDER##